# EXHIBIT A

LEXSEE 2002 US DIST LEXIS 6850

**RICHARD NMI BELL, on behalf of himself and all others similarly situated, Plaintiff, v. ASCENDANT SOLUTIONS, INC., NORMAN CHARNEY, PAUL JENNINGS, CCLP, LTD., PAUL G. SHERER, and ALAN E. SALZMAN, Defendants.**

CIVIL ACTION NO. 3:01-CV-0166-P

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

*2002 U.S. Dist. LEXIS 6850; Fed. Sec. L. Rep. (CCH) P91,779*

**April 17, 2002, Decided**
**April 17, 2002, Filed; April 18, 2002, Entered**

**SUBSEQUENT HISTORY:** Class certification denied by *Bell v. Ascendant Solutions, Inc., 2004 U.S. Dist. LEXIS 12321* (N.D. Tex., July 1, 2004)

**DISPOSITION:** [*1] Plaintiffs' Amended Motion Agreed to by All Prior Movants, Seeking the Appointment of Lead Plaintiffs and Approval of their Selection of Counsel GRANTED. Motion to appoint co-lead counsel, DENIED and provisionally the motion to appoint liaison counsel GRANTED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For RICHARD NMI BELL, plaintiff: Jules Brody, Attorney at Law, Stull Stull & Brody, Joseph H Weiss, Attorney at Law, Weiss & Yourman, Jeffrey S Abraham, Attorney at Law, Law Office of Jeffrey S Abraham, New York, NY USA.

For RICHARD NMI BELL, plaintiff: W Kelly Puls, Attorney at Law, Puls Taylor & Woodson, Fort Worth, TX USA.

For MARK MCGUIRE, consolidated plaintiff: Marc A Topaz, Attorney at Law, Schiffrin & Barroway, Bala Cynwyd, PA USA.

For MARK MCGUIRE, KATHLYN HOFFMAN, DENNIS HOFFMAN, BILL RICKER, consolidated plaintiffs: Marc R Stanley, Roger L Mandel, Martin D H

Woodward, Attorneys at Law, Stanley Mandel & Iola, Dallas, TX USA.

For MARK MCGUIRE, consolidated plaintiff: Paul J Geller, Attorney at Law, Cauley Geller Bowman & Coates, Boca Raton, FL USA.

For DONALD R ELLIOTT, consolidated plaintiff: [*2] Roger F Claxton, Attorney at Law, Claxton & Hill, Dallas, TX USA.

For KATHLYN HOFFMAN, DENNIS HOFFMAN, consolidated plaintiffs: Leo W Desmond, Attorney at Law, Law Office of Leo W Desmond, West Palm Beach, FL.

For KATHLYN HOFFMAN, DENNIS HOFFMAN, consolidated plaintiffs: Marvin L Frank, Attorney at Law, Rabin & Peckel, New York, NY USA.

For BILL RICKER, consolidated plaintiff: Jeffrey L Kodroff, Attorney at Law, Spector Roseman & Kodroff, Brian M Felgoise, Attorney at Law, Law Office of Brian M Felgoise, Philadelphia, PA USA.

For BILL RICKER, consolidated plaintiff: Evan J Smith, Attorney at Law, Brodsky & Smith, Bala Cynwyd, PA USA.

For ASCENDANT SOLUTIONS INC, NORMAN CHARNEY, PAUL JENNINGS, CCLP LTD, PAUL G SHERER, ALAN E SALZMAN, defendants: Paul R

2002 U.S. Dist. LEXIS 6850, *; Fed. Sec. L. Rep. (CCH) P91,779

Bessette, Attorney at Law, Brobeck Phleger & Harrison, Austin, TX USA.

For ASCENDANT SOLUTIONS INC, defendant: Michael J Biles, Attorney at Law, Brobeck Phleger & Harrison, Austin, TX USA.

For ASCENDANT SOLUTIONS INC, NORMAN CHARNEY, PAUL JENNINGS, CCLP LTD, PAUL G SHERER, ALAN E SALZMAN, defendants: James N Kramer, Attorney at Law, Brobeck Phleger & Harrison, San Francisco, CA USA.

For PLUTARCH [*3]    LTD., SINGLINDE M JEFFRIES, MARIO SONZONE, movants: Robert J Hill, Attorney at Law, Claxton & Hill, Dallas, TX USA.

For SINGLINDE M JEFFRIES, MARIO SONZONE, movants: Roger F Claxton, Attorney at Law, Claxton & Hill, Dallas, TX USA.

**JUDGES:** JORGE A. SOLIS, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JORGE A. SOLIS

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiffs' Amended Motion Agreed to by All Prior Movants, Seeking the Appointment of Plutarch, Ltd., Singlinde M. Jeffries and Mario Sonzone as Lead Plaintiffs and Approval of their Selection of Counsel (the "Motion"), filed November 20, 2001. n1 After careful consideration of the Parties' briefing and the applicable law, the Court hereby GRANTS the Motion, DENIES the motion to appoint co-lead counsel, and GRANTS provisionally the motion to appoint liaison counsel.

    n1 The Ascendant Defendants filed their Response to Plaintiffs' Amended and Agreed Upon Motion to be Appointed Lead Plaintiff and for Approval of Lead Counsel, and Opposition to the Proposed Order on November 30, 2001. Counsel for the proposed lead Plaintiffs filed a reply brief on December 17, 2001.

[*4]

### PROCEDURAL HISTORY

Before the Court is the consolidation of six securities class actions alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

as amended by the Private Securities Litigation Reform Act of 1995, *15 U.S.C. § § 78u-4* and Rule 10b-5 promulgated thereunder. Plaintiff Richard Bell ("Bell") originally filed this action individually and on behalf of all those who purchased common stock of Ascendant Solutions, Inc. ("Ascendant") between November 11, 1999 and January 24, 2000. Bell claims that Defendants disseminated materially false and misleading statements regarding Ascendant.

On March 30, 2001, three different plaintiffs moved the Court separately for their appointment as Lead Plaintiff. Those plaintiffs were Plutarch, Ltd., Singlinde M. Jeffries, and the ASD Plaintiffs (Mario Sonzone, Kimberly Cox, and Aaresh Jamshedi) ("Original Movants"). On November 20, 2001, prior to any Court ruling on the three pending motions, the Original Movants withdrew their motions and filed this consolidated Motion seeking their appointment as Lead Plaintiff and approval of their selection of co-lead counsel.

Plaintiffs Plutarch, [*5] Ltd., Singlinde M. Jeffries, and Mario Sonzone ("the Proposed Ascendant Lead Plaintiffs") seek appointment as Lead Plaintiff n2 in this consolidated action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the PSLRA. The Proposed Ascendant Lead Plaintiffs also seek approval of the appointment of the law firms Abbey Gardy, LLP, Cauley Geller Bowman & Coates, LLP, and Abraham & Paskowitz as lead counsel, and Claxton & Hill, P.L.L.C. as local counsel.

    n2 Although the Parties refer to members of the Proposed Ascendant Lead Plaintiff as "co-Lead Plaintiffs," we agree with the Third Circuit (and the Securities and Exchange Commission) that "there is one lead plaintiff under the Reform Act: an individual, an institution or a properly-constituted group." *In re Cendant Corp. Litig., 264 F.3d 201, 223 n.3 (3d Cir. 2001).*

    "The statute always speaks of the lead plaintiff in the singular, requiring that the court appoint 'as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members' and stating that the presumptively 'most adequate plaintiff . . . is the person or group of persons' that satisfies the

2002 U.S. Dist. LEXIS 6850, *; Fed. Sec. L. Rep. (CCH) P91,779

statute's three threshold requirements. *15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)* (emphasis added). The biggest consequence of this distinction is that only one 'entity' is entitled to speak for the class: the lead plaintiff. In cases where a group serves as lead plaintiff, it is for the group's members to decide how the group will make decisions, but it is the group - not its constituent members - that speaks for the class. A fortiori, we use the singular 'Lead Plaintiff' throughout this opinion." Id.

[*6]

The PSLRA establishes the procedure governing the appointment of a Lead Plaintiff and lead counsel in private class actions arising under the Securities Exchange Act of 1934. See *15 U.S.C. § § 78u-4(a)(1), (a)(3)(B)*. The Court considers the statutory requirements in turn.

**DISCUSSION**

In their Motion, the Proposed Ascendant Lead Plaintiffs request that the Court appoint all three of them as Lead Plaintiff in this action and that the Court approve their selection of three different law firms as co-lead counsel. (Mot. at 1.) In response, Defendants argue that the Proposed Ascendant Lead Plaintiffs fail to qualify as the "most adequate plaintiff," as required by the PSLRA, the statute that governs the appointment of Lead Plaintiff and lead counsel in class action securities lawsuits, and therefore, the Motion should be denied. Further, Defendants oppose the Proposed Ascendant Lead Plaintiffs' proposed Order, which seeks entry of a motion-to-dismiss briefing schedule and imposes certain document-retention obligations, both of which Defendants find objectionable.

**A. DEFENDANTS' STANDING TO OBJECT TO APPOINTMENT OF LEAD PLAINTIFFS.**

In their [*7] reply brief, the Proposed Ascendant Lead Plaintiffs contend that Defendants lack standing to challenge a lead-plaintiff application pursuant to the express terms of the PSLRA. (See Reply at 3-4.) Although courts are split on whether a defendant has standing to object to the lead plaintiff appointment, the majority of courts - and this court - have concluded that a defendant does not have standing to object. See *Gluck v. CellStar Corp., 976 F. Supp. 542, 550 (N.D. Tex. 1997)* (Buchmeyer, J.); *Zuckerman v. Foxmeyer Health Corp.,*

*1997 U.S. Dist. LEXIS 23549*, Civ. A. No. 3:96- *CV-2258-T, 1997 WL 314422*, at *1 (N.D. Tex. Mar 28, 1997)* (Maloney, J.); see also *In re Waste Management, Inc. Sec. Litig., 128 F. Supp. 2d 401, 409 (S.D. Tex. 2000); Takeda v. Turbodyne Technologies, Inc., 67 F. Supp. 2d 1129, 1138 (C.D. Cal. 1999); Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60-61 (D. Mass. 1996); Fischler v. AMSouth Bancorporation, 1997 U.S. Dist. LEXIS 2875*, NO. 96-1567- *CIV-T-17A, 1997 WL 118429*, at *1 (M.D. Fla. Feb 6, 1997).

Courts have so held because "the statute is clear that only *potential plaintiffs* may be heard regarding appointment [*8] of a Lead Plaintiff." *Gluck, 976 F. Supp. at 550* (emphasis added.) ("It is clear that Defendants have no standing to oppose the appointment of Lead Plaintiff at this stage of the litigation"). Further, the PSLRA expressly directs the Court to "consider any motion made *by a purported class member*" to determine the most adequate plaintiff. *15 U.S.C. § 78u-4(a)(3)(B)(i)* (emphasis added). And rebuttal of the presumption of the most adequate plaintiff is limited to "proof *by a member of the purported plaintiff class*." Id. § *78u-4(a)(3)(B)(iii)(II)* (emphasis added). Moreover, discovery regarding the issue "may be conducted *by a plaintiff*" only if "the plaintiff first demonstrates a reasonable basis" for finding the presumptively most adequate plaintiff inadequate. Id. § *78u-4(a)(3)(B)(iv)* (emphasis added); see *Gluck, 976 F. Supp. at 550; Greebel, 939 F. Supp. at 60*.

Defendants suggest in their Response that the Proposed Ascendant Lead Plaintiffs are required at this stage, and have failed, to establish their adequacy as a class under Rule 23's certification requirements. (Resp. at 2.) However, [*9] Congress intended that appointment of a Lead Plaintiff occur at an early stage of the litigation, before consideration of certification issues. See *Gluck, 976 F. Supp. at 550*. n3 "Requiring evidentiary proof of the Rule 23 requirements at the Lead Plaintiff appointment stage (absent a showing of a reasonable basis by another plaintiff) would vitiate Congress' intent to provide for a speedy Lead Plaintiff determination, to pass the reins of the litigation to large investors at an early stage, and to eliminate unnecessary expenses in securities litigation." Id.

n3

Congress intended that the lead plaintiff be determined at an early stage of the litigation. Though neither the text of the PSLRA nor its legislative history explicitly describe the relationship between motions for lead plaintiff and

Case 1:05-cv-00316-GMS     Document 9-2     Filed 07/05/2005     Page 5 of 23

Page 4

2002 U.S. Dist. LEXIS 6850, *; Fed. Sec. L. Rep. (CCH) P91,779

motions for class certification, it seems clear that Congress recognized that these motions involved distinct inquiries. *[15 U.S.C. § 78u-4(a)(3)(B)]* refers throughout its text to 'purported class members.' Congress implicitly understood, therefore, that lead plaintiff motions would be decided prior to consideration of certification issues.

*Greebel, 939 F. Supp. at 60-61 (D. Mass. 1996)*

[*10]

Therefore, Defendants have no standing to oppose the appointment of Lead Plaintiff at this stage of the litigation. However, the Court's finding is without prejudice to later typicality or adequacy challenges at the class certification stage of this litigation.

## B. APPOINTMENT OF LEAD PLAINTIFF - THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF.

Where a court has pending before it one or more class actions arising under the Securities Exchange Act of 1934, the PSLRA directs that a Lead Plaintiff be selected early in the case, and that the Lead Plaintiff is to select and retain lead counsel, subject to court approval. See *15 U.S.C. § 78u-4(a)(3)(B)(v)*. One of the main goals of the PSLRA is "to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being lawyer-driven." See *In re Waste Management, Inc. Sec. Litig., 128 F. Supp. 2d 401, 411-12 (S.D. Tex. 2000).*

The PSLRA provides that the Court shall consider all timely-filed motions made by purported class members seeking to be appointed Lead Plaintiff. See *15 U.S.C. § 78u-4(a)(3)(B)(1)*. [*11] The Court shall appoint as Lead Plaintiff the member or members of the purported plaintiff class that the court considers most capable of adequately representing the interests of the class members. Id. This Lead Plaintiff is termed the "most adequate plaintiff." Id.

In making its determination of the Lead Plaintiff, the court is directed to adopt a presumption that the most adequate plaintiff is the person or group of persons that filed a motion, that "has the largest financial interest in the relief sought by the class," and that "otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*" *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. This presumption may be rebutted only by proof by

another member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

### 1. Filing of Motion for Appointment of Lead Plaintiff.

The first factor the Court must consider in determining whether the [*12] Proposed Ascendant Lead Plaintiffs are entitled to the presumption of Lead Plaintiff status is whether the Proposed Ascendant Lead Plaintiffs filed the complaint or a motion for their appointment as Lead Plaintiff. See *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)*. In this case, the Proposed Ascendant Lead Plaintiffs have moved - and are the only plaintiffs who have moved - for Lead Plaintiff status.

### 2. Largest Financial Interest and Aggregation of Plaintiffs.

The second criterion to gain the presumption is to have, in the determination of the Court, the largest financial interest in the relief sought by the class. See *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)*. According to the briefing filed by the Original Movants, Plutarch's losses are calculated as $ 443,049.14 (Plutarch Mot. at 5), Jeffries' losses are calculated at $ 299,159.06 (Jeffries Mot. at Ex. 1), and Sonzone's losses are calculated at $ 89,331 (ASD Mot. at 1-2) - for a total of $ 831,539.20. The Court agrees with those courts that have found that when there are no other parties seeking to be appointed Lead Plaintiff, the moving parties have the largest financial interest. [*13] See *Holley v. Kitty Hawk, Inc., 200 F.R.D. 275, 279 (N.D. Tex. 2001)* (Solis, J.) (quoting *Greebel, 939 F. Supp. at 64; Squyres v. Union Texas Petroleum Holdings, Inc., 1998 U.S. Dist. LEXIS 22945, NO. CV 98-6085- LGBAIJX, 1998 WL 1144586*, at *3 (C.D. Cal. Nov 02, 1998). Thus, the largest financial interest requirement is met by the Proposed Ascendant Lead Plaintiffs regardless of whether another aggregated group might hold a greater financial interest in the outcome of the case.

At this juncture, the Court must decide whether aggregating the plaintiffs into one Lead Plaintiff is appropriate. Courts are divided over whether multiple plaintiffs may be aggregated to satisfy the "largest financial interest" requirement. See *Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1067 (C.D. Cal. 1999)*. Though the Proposed Ascendant Lead Plaintiffs need not all aggregate to satisfy the largest financial interest requirement in the absence of opposition from competing potential lead plaintiffs, many Courts are remain skeptical of appointing multiple plaintiffs as the Lead Plaintiff. See generally *Burke v. Ruttenberg, 102*

Case 1:05-cv-00316-GMS    Document 9-2    Filed 07/05/2005    Page 6 of 23

Page 5

2002 U.S. Dist. LEXIS 6850, *; Fed. Sec. L. Rep. (CCH) P91,779

*F. Supp.2d 1280, 1322-1338 (N.D. Ala. 2000)* [*14] (discussing at length whether to aggregate plaintiffs into one lead plaintiff group); Glen DeValerio et al., Appointment of Lead Plaintiff and Lead Counsel Under the Private Securities Litigation Reform Act of 1995, SE82 ALI-ABA 417, 421-34 (2000).

Yet, "the majority of courts addressing this issue have permitted the aggregation of claims," because multiple plaintiffs are permitted by the PSLRA. See *Yousefi, 70 F. Supp. 2d at 1070* (listing a selection of courts); Kevin P. Roddy, Five Years of Practice and Procedure under the Private Securities Litigation Reform Act of 1995, SG022 ALI-ABA 47, 63-67 (2001) (citing cases approving and rejecting aggregation of plaintiffs). Aggregation has been permitted even where the plaintiffs are wholly unrelated to each other outside of the class action, as long as no party or class member opposes the motion. See *Yousefi, 70 F. Supp. 2d at 1067*. Often courts have denied applications for one hundred or more plaintiffs to be aggregated but permitted groups of six or less to serve together. See id; see, e.g., *In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 352 (S.D. Cal. 1998)* (denying [*15] appointment to group of 250 unrelated investors); *Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 408-09 (D. Minn. 1998)* (rejecting a group of 300 but accepting a group of six).

The Court sees no textual statutory obstacle to considering the three plaintiffs' financial interests together. Nevertheless, the Court will consider whether grouping the three plaintiffs offers advantages that outweigh the disservice to the PSLRA's interest in creating a small number of lead plaintiffs to counterbalance the influence of lawyers. The Court favors the "rule of reason" employed on a case-by-case inquiry to decide whether a certain group is appropriately compact. See *Chill, 181 F.R.D. at 409* (employing rule-of-reason standard in considering a group of six, and ordering the submission of a twenty-person group representing both large institutional and small investors); see also *In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)* (finding that diversity among plaintiffs helps ensure that all class members' interests are represented); but see *Ruttenberg, 102 F. Supp. 2d at 1326-38* (disfavoring a diversity [*16] rationale for large groups and favoring a strict inquiry to find the minimum number of plaintiffs necessary).

Applying the rule of reason in this particular case, the Court finds that aggregation of all three plaintiffs into one Lead Plaintiff is appropriate. In this case, the selection of three plaintiffs does not unreasonably disrupt the Lead Plaintiff's ability to control the lawyers while keeping its decisionmaking from becoming unwieldy. Although this is not a case involving complicated facts, massive sums of money, or allegations of wrongdoing

spread out over several years, the two plaintiffs with the largest financial interest in the outcome of the litigation (Plutarch and Jeffries) appear to be foreign citizens. n4 Therefore, because it may be inconvenient for Plutarch and Jeffries to appear for hearings, to meet in person with counsel, and to meet in person for settlement discussions, the Court believes it is sensible and useful to include Sonzone, a United States resident, as one of the plaintiffs included as Lead Plaintiff. Moreover, the inclusion of one foreign corporation (Plutarch), one foreign individual (Jeffries) and one United States resident (Sonzone), helps create [*17] balance among the demographics of the lead plaintiff group members, and improves diversity of experience. Thus, the Court finds that the appointment of all three plaintiffs as Lead Plaintiff would not frustrate the purpose of the PSLRA.

n4 Plutarch is a foreign corporation based in Israel (Plutarch Mot. Ex. C) and Jeffries is an individual who resides in Germany (Jeffries Mot. Ex. A).

### 3. Rule 23 Requirements.

Under Rule 23, only typicality and adequacy are directly relevant to the choice of the Lead Plaintiff in securities fraud cases. See *In re Waste Management, Inc., 128 F. Supp. 2d at 411*. Although the inquiry at this stage of the litigation in determining the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and the capacity to provide adequate representation for those class members. See id. [*18]

Judging from the nature of the claims presented to the Court, proof of the injury and losses resulting from Defendants' alleged misrepresentations would prove the claims of and other claimants alike. See *Cellstar, 976 F. Supp. at 546*. The Court is aware of no differences among the class members that would substantially alter the proof required for one member's claims versus another's. Thus, for the purpose of appointing a Lead Plaintiff, the claims of the Proposed Ascendant Lead Plaintiffs are typical of those of the purported class members. See id. Additionally, the Lead Plaintiff must fairly and adequately protect the interests of the class. Each of the Proposed Ascendant Lead Plaintiffs have a substantial sum at stake and they have no apparent potential conflicts between themselves and the class members; further, they have chosen competent counsel. See *Cellstar, 976 F. Supp. at 546; Modell v. Eliot Savs. Bank, 139 F.R.D. 17, 23 (D. Mass. 1991)* (requiring lack of conflict between class representatives and class, as

2002 U.S. Dist. LEXIS 6850, *; Fed. Sec. L. Rep. (CCH) P91,779

well as qualified and experienced counsel who will vigorously conduct the litigation). Thus, for the purpose of [*19] appointing a Lead Plaintiff, the Proposed Ascendant Lead Plaintiffs are an adequate representative of the class.

Since there is no rebuttal from other class members, Plutarch, Ltd., Singlinde M. Jeffries, and Mario Sonzone are provisionally approved as Lead Plaintiff, subject to any later challenges at the class certification stage of this litigation.

## C. APPOINTMENT OF LEAD COUNSEL.

The Proposed Ascendant Lead Plaintiffs seek to appoint three law firms as co-lead counsel: Abbey Gardy, LLP, Cauley Geller Bowman & Coates, LLP, and Abraham & Paskowitz. They also seek appointment of Claxton & Hill, P.L.L.C. as liaison counsel. Because one of the central purposes of the PSLRA is to enable plaintiffs to control counsel, the PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4*(a)(3)(B)(v); see S. Rep. No. 104-98 at 11 (1995). The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." *15 U.S.C. § 78u-4*(a)(3)(B)(iii)(II)(aa).

The [*20] Court is skeptical of the need to appoint three law firms as lead counsel in this case. The losses suffered by the Proposed Ascendant Lead Plaintiffs totals $ 831,539.20 and the company's total losses as described in the Complaint is less than $ 2 million, which is no small sum, but would not in itself compel the Court to find that three law firms need to manage the case. (See Compl. PP 33, 36.) Nor does the Court see why this action is particularly complex or beyond the capabilities of each of the proposed lead firms individually. See *In re Orbital Sciences Corp. Sec. Litig., 188 F.R.D. 237, 240 (E.D. Va. 1999)* ("the purpose of the statute favors the choice of one law firm to act in this capacity absent a specific reason to use multiple firms"); *In re Milestone Scientific Sec. Litig., 187 F.R.D. 165, 180 (D. N.J. 1999)* (rejecting proposal that court appoint several co-lead counsel, executive committee, and liaison counsel). Thus, in this case, the Court finds that the PSLRA and the class would be better served by the appointment of one law firm to manage this case. Due to the manageable size of this case, the Court believes that it is in the class's [*21] best interest to have one law firm controlling and coordinating the litigation and with whom the Lead Plaintiff has their primary attorney-client relationship.

Because Congress has evinced a preference for Lead Plaintiff's selection of its choice of counsel, the Court hereby instructs Lead Plaintiff to select and present to the

Court within thirty (30) days of entry of this order, the name and qualifications of *one* law firm to serve as lead counsel in this lawsuit. Lead Plaintiff may select one of the three firms already proposed (*i.e.* Abbey Gardy, LLP, Cauley Geller Bowman & Coates, LLP, and Abraham & Paskowitz) or may select an entirely different firm. The Court will then review Lead Plaintiff's selection and will approve the selection in accordance with the PSLRA. If Lead Plaintiff is unable to select or agree on a single law firm to serve as lead counsel within the prescribed time period, the Court will *sua sponte* appoint lead counsel.

Should Lead Plaintiff select one of the three law firms already proposed or should Lead Plaintiff select a firm that is based outside of the Northern District of Texas (and does not have a local office capable of handling the work), [*22] the Court hereby appoints Claxton & Hill, P.L.L.C., local counsel in this case. The Court expects that the firm will advise lead counsel on local procedural matters, create and maintain a master list of all parties and their respective counsel, distribute communications between the Court and counsel, apprise counsel of developments and scheduling matters in the case, and generally assist in the coordination of the case. On these conditions, the Court approves the appointment of Claxton & Hill as liaison counsel temporarily with the further proviso that Claxton & Hill's role be limited to the procedural advice and services specified above. Compensation will be awarded according to only those duties listed above, strictly construed. The Court will not permit both Claxton & Hill and the lead counsel to be compensated for any duplication of services among the law firms. The appointment is provisional, dependent upon the permanent appointment of a Lead Plaintiff at the class certification stage.

The other firms listed on the Motion that have not sought appointment to any role in this action will have no lead plaintiff counsel role or liaison counsel role in this case. However, lead counsel, [*23] once approved, is permitted to distribute non-duplicative work assignments to non-lead counsel to facilitate the orderly and efficient prosecution of the case and to spread the risk of the litigation.

## D. DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED ORDER.

Defendants object to Plaintiffs' proposed motion-to-dismiss briefing schedule and document retention plan as unnecessary. The Court agrees. Because the Court has not yet approved Lead Plaintiff's selection of lead counsel, it is premature to establish a scheduling order and briefing schedule concerning an amended and consolidated complaint and motions to dismiss same. The Court is willing to revisit this issue at the appropriate time.

2002 U.S. Dist. LEXIS 6850, *; Fed. Sec. L. Rep. (CCH) P91,779

SO ORDERED, this 17th day of April, 2002.

UNITED STATES DISTRICT JUDGE

JORGE A. SOLIS

# EXHIBIT B

LEXSEE 1997 US DIST LEXIS 2875

**MATTHEW FISCHLER, Plaintiff, vs. AMSOUTH BANCORPORATION, AMSOUTH BANK OF FLORIDA, N.A., AMSOUTH BANK OF ALABAMA, N.A., AMSOUTH INVESTMENT SERVICES, INC., Defendants.**

**CASE NO. 96-1567-CIV-T-17A**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*1997 U.S. Dist. LEXIS 2875; 10 Fla. L. Weekly Fed. D 646*

**February 6, 1997, Decided**
**February 6, 1997, FILED**

**DISPOSITION:** [*1] Determination of the Motion of Vickie B. Smith for Appointment as Lead Plaintiff for Alabama Class deferred.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MATTHEW FISCHLER, plaintiff: Jonathan L. Alpert, Patrick B. Calcutt, Alpert, Barker & Calcutt, P.A., Tampa, FL. Martin D. Chitwood, Christi C. Mobley, Appel, Chitwood & Harley, Atlanta, GA. Craig G. Harley, Appel Chitwood & Harley, Atlanta, GA.

For AMSOUTH BANK OF FLORIDA, a foreign corporation and national banking association, defendant: G. Calvin Hayes, Frederick Stewart Schrils, Holland & Knight, Tampa, FL USA. James J. Restivo, Jr., Thomas L. Allen, Gregory B. Jordan, Reed, Smith, Shaw & McClay, Pittsburgh, PA USA. For AMSOUTH BANK OF ALABAMA, N.A., a foreign corporation and national banking association, defendant: G. Calvin Hayes, (See above), Frederick Stewart Schrils, (See above). James J. Restivo, Jr., (See above), Thomas L. Allen, (See above), Gregory B. Jordan, (See above). For AMSOUTH INVESTMENT SERVICES, INC., a foreign corporation, defendant: G. Calvin Hayes, (See above), Frederick Stewart Schrils, (See above). James J. Restivo, Jr., (See above), Thomas L. Allen, (See above), Gregory B. Jordan, (See above). For AMSOUTH BANCORPORATION, a foreign corporation, [*2] defendant: G. Calvin Hayes, (See above), Frederick Stewart Schrils, (See above). James J. Restivo, Jr., (See

above), Thomas L. Allen, (See above), Gregory B. Jordan, (See above).

For VICKIE B. SMITH, movant: Judy S. Hoyer, James, Hoyer, Newcomer, P.A., Tampa, FL. For LOUIS D. BARGE, movant: Judy S. Hoyer, (See above). Alan Schulman, Jan M. Adler, Pamela M. Parker, Milberg, Weiss, Bershad, Hynes & Lerach LLP, San Diego, CA. M. Clay Ragsdale, E. Ansel Strickland, Law Offices of M. Clay Ragsdale, Birmingham, AL. Steven E. Cauley, Law Offices of Steven E. Cauley, Little Rock, AR. For ALICE M. BARGE, movant: Judy S. Hoyer, (See above). Alan Schulman, (See above), Jan M. Adler, (See above), Pamela M. Parker, (See above). M. Clay Ragsdale, (See above), E. Ansel Strickland, (See above). Steven E. Cauley, (See above).

**JUDGES:** ELIZABETH A. KOVACHEVICH, United States District Judge

**OPINIONBY:** ELIZABETH A. KOVACHEVICH

**OPINION:**

The Act creates a rebuttable presumption that the most adequate plaintiff is that person who "has either filed the complaint or made a motion in response to a notice," § 78u-4(a)(3)(B)(iii)(I)(aa), "has the largest financial interest in the relief sought," § 78u-4(a)(3)(B)(iii)(I)(bb), and "otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure*," § 78u-4(a)(3)(B)(iii)(I)(cc). Any member [*4] of the purported plaintiff class may rebut the presumption upon proof the presumptive most adequate

Case 1:05-cv-00316-GMS    Document 9-2    Filed 07/05/2005    Page 11 of 23

Page 2

1997 U.S. Dist. LEXIS 2875, *; 10 Fla. L. Weekly Fed. D 646

plaintiff "is subject to unique defenses," § 78u-4(a)(3)(B)(iii)(II)(bb), or "will not fairly and adequately protect the interests of the class," § 78u-4(a)(3)(B)(iii)(II)(aa). Discovery may be had on the issue only upon a showing of a reasonable basis for a finding the presumptive most adequate plaintiff cannot adequately represent the class. § 78u-4(a)(3)(B)(iv).

DISCUSSION

The matters before the Court arise under provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA), amending the Securities Exchange Act of 1934. Determination of this motion involves issues of first impression in this Court regarding the Act, which has been interpreted by few courts nationwide. The legislative history shows Congress enacted the PSLRA in response to perceived abuses of the class action procedure. H. Conf. Rep. No. 104-369, at 31 (1996), reprinted in 1995 U.S.C.C.A.N. 730 at 730. The lead plaintiff provisions are intended to encourage plaintiffs "to exercise supervision and control of the lawyers for the class," Id. at 32, 1995 U.S.C.C.A.N. at 731, instead of the [*5] opposite. Likewise, the most adequate plaintiff is to choose lead counsel, rather than the lawyers picking the plaintiffs. Id. at 35, 1995 U.S.C.C.A.N. at 734. While it is clear that determination of lead plaintiff and lead counsel are separate questions, Id., 1995 U.S.C.C.A.N. at 734, common sense makes plain that, in most cases, these issues will be decided concurrently.

Plaintiff brought this action in August, 1996, purporting to represent a class of persons who bought non-depository investment vehicles from Defendants. The putative class includes all those with claims arising from the disputed course of conduct by Defendants under federal securities laws and under the laws of four states, including Alabama. Plaintiff asserts he lost approximately $ 2,679.00 of his principal because of Defendants' alleged wrongful acts. Movant Smith asserts similar claims under Alabama securities laws, and states she lost more than $ 16,000 of principal. Movant notes the existence in Alabama state court of a putative class action asserting the same state law claims. While claiming to be a member of the Alabama class, Movant is not a named plaintiff in the state court action. Movant seeks [*6] appointment in this action as "Lead Plaintiff to represent the interests of all persons whose interests are already being represented in a prior class action pending in the State of Alabama, and [approval] of her selection of Co-Lead Counsel for those class members." Counsel for Movant also is counsel for named plaintiffs in the Alabama action.

Defendants filed a response neither consenting to nor opposing appointment of Movant as lead plaintiff.

The plain language of the Act dictates only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60-61 (D. Mass. 1996).* However, the Court notes the determination of lead plaintiff and lead counsel at this stage does not preclude revisiting the issue upon consideration of a motion for class certification. *Greebel, 939 F. Supp. at 61.*

Plaintiff opposes the Motion and seeks discovery relating to whether Movant is the most adequate plaintiff. Plaintiff filed the notice the Act contemplates August 21, 1996 (entry date August 22, 1996), and a corrected notice August 29, 1996 (entry [*7] date August 30, 1996). Movant filed her Motion on October 21, 1996. There is no dispute as to timeliness. Movant certified she filed in response to Plaintiff's notice. Plaintiff acknowledges that, at present, there is no dispute that Movant has the largest financial interest in the relief sought. The issues at hand are:

(a) whether Movant "otherwise satisfies" Rule 23 and thus is entitled to the (3)(B)(iii) presumption she is the most adequate plaintiff;

(b) whether Plaintiff has shown Movant either "will not fairly and adequately represent the interests of the class" or "is subject to unique defenses," thereby rebutting the presumption; and

(c) whether Plaintiff has demonstrated "a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class" and therefore may seek discovery.

The manifest intent of the Act is determining the plaintiff most capable of pursuing the action and representing the interests of the class. H. Conf. Rep. No. 104-369, at 34 (1996), reprinted in 1995 U.S.C.C.A.N. 730 at 733. A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class [*8] certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy. *Fed. Rule Civ. P. 23.* The language of the Act envisions this delineation, which directs attention to "unique defenses" that may apply to a presumptive "most adequate" plaintiff and whether that plaintiff will "adequately represent" the class. The analysis inevitably comes down to the one question of whether Movant will fairly and adequately represent the interests of the class. The Court must determine whether Movant is entitled to the presumption, whether Plaintiff has rebutted that presumption, or whether Plaintiff demonstrated a reasonable basis for taking discovery.

Case 1:05-cv-00316-GMS    Document 9-2    Filed 07/05/2005    Page 12 of 23

Page 3

1997 U.S. Dist. LEXIS 2875, *; 10 Fla. L. Weekly Fed. D 646

As to the existence of unique defenses against Movant, she has not joined the Alabama state court action as a named plaintiff, but asserts she is a member of the class. Her Motion and supporting documents, including the complaint in that action, therefore, may not indicate any potential unique defenses Defendants may have against her. Defendants' lack of opportunity to file an answer specifically contemplating Movant as a plaintiff adds uncertainty to this [*9] question.

Whether a named plaintiff will fairly and adequately represent the interests of the class is a question of fact for the district court. *Plummer v. Chemical Bank, 668 F.2d 654, 659 (2d Cir. 1982),* citing *Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969).* Judges should have access to and explore the facts sufficiently to make an intelligent determination of the matter. Id. The determination of fair and adequate representation rests on two bases: common interests between representative and the class and a willingness and ability to vigorously prosecute the action. *Gonzales v. Cassidy, 474 F.2d 67, 72 (5th Cir. 1973).* Further, the named representatives must not possess interests antagonistic to those of the other class members. *Christiana Mortgage Corp. v. Del. Mortgage Bankers Ass'n, 136 F.R.D. 372, 380 (D. Del. 1991).* Nor should the interests of named representatives and the class be such that there is likely to be a divergence of viewpoint or goals. *Mateo v. M/S Kiso, 805 F. Supp. 761, 771 (N.D. Cal. 1991).* However, there need not be a complete absence of conflict. *Id. at 772.* Only conflict that is "serious and irreconcilable" [*10] will be fatal. Id. Finally, the purported representative "must demonstrate that she will vigorously prosecute the action, and plaintiff must provide both adequate financing and competent counsel." *Sandlin v. Shapiro & Fishman, 168 F.R.D. 662, 668 (M.D. Fla. 1996),* quoting *Brooks v. Southern Bell Telephone & Telegraph Co., 133 F.R.D. 54, 56 (S.D. Fla. 1990).*

Assuming that Movant adopts the legal posture of the complaint in the state court action, she would be pressing claims only under Alabama law, and not the federal claims also included in this action. That alone does not necessarily indicate conflict. However, Movant states she "has come forward in order to ensure that the rights of the Alabama Class are not jeopardized." Memorandum of Points and Authorities in Support of Motion at 2 (Dkt. 20). Movant further urges "it makes eminent sense . . . to have the claims of the Alabama Class prosecuted by Alabama plaintiffs in an Alabama court." Id. at 5. Plaintiff points out that an intent by Movant "to stay, divide, or sever portions of the class for disposition elsewhere," Plaintiff's Response to Motion at 3 (Dkt. 34), raises the question of whether Movant's goals may [*11] be so divergent and in conflict with those of the class as to render her an inadequate representative. The analysis, as has been repeatedly pointed out, is hindered by the uncertainty of Movant's claims and defenses. The Act requires a plaintiff seeking discovery to demonstrate "a reasonable basis for a finding that the presumptively most adequate plaintiff" cannot adequately represent the class. The uncertainty of Movant's claims and the unanswered questions of Movant's intent, both raised by Plaintiff, are sufficient to meet that standard. Accordingly, it is

**ORDERED** that the determination of the Motion of Vickie B. Smith for Appointment as Lead Plaintiff for Alabama Class be **deferred,** and Plaintiff may conduct expedited discovery as to whether Movant is the most adequate plaintiff. The parties shall advise the Court as to the proposed schedule for the discovery as soon as possible, but no later than ten days from the date of this Order.

**DONE AND ORDERED** in Chambers, in Tampa, Florida, on this 6th day of February, 1997.

ELIZABETH A. KOVACHEVICH

United States District [*12] Judge

# EXHIBIT C

LEXSEE 1997 US DIST LEXIS 11866

HARRY LAX, on behalf of himself and all others similarly situated, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORPORATION, et al., Defendants. MILTON CASTILLO, JR. and CHRIS VINES, Plaintiffs, v. MITCHELL C. KAHN, THOMAS R. EHMANN, and FIRST MERCHANTS ACCEPTANCE CORP., Defendants. SAMUEL ZUCKER, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORP., and MITCHELL C. KAHN, Defendants. JARED HERSHKOWITZ, on behalf of himself and all others similarly situated, Plaintiff, v. MITCHELL C. KAHN, THOMAS EHMANN, PAUL VAN EYL, and FIRST MERCHANTS ACCEPTANCE CORP., Defendants. ROBERT MILLER, on behalf of himself and all others similarly situated, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORP., MITCHELL C. KAHN, THOMAS EHMANN, PAUL VAN EYL, MARCY H. SHOCKEY, SOLOMON A. WEISGAL; and STOWE W. WYANT, Defendants. SANDERS FAMILY PARTNERS, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORP., MITCHELL C. KAHN, THOMAS EHMANN, and PAUL VAN EYL, Defendants. HOWARD HERTZBERG, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORP., MITCHELL C. KAHN, THOMAS EHMANN, and PAUL VAN EYL, Defendants. SAMI and SUZANNA SAWDAYE, on behalf of themselves and all others similarly situated, Plaintiffs, v. FIRST MERCHANTS ACCEPTANCE CORP., et al., Defendants. JAMES L. KATZ, ANDREW GRIFFIN, PROFIT SHARING PLAN, KATZ MANAGEMENT PROFIT SHARING PLAN FOR THE BENEFIT OF ABE KATZ, ABE KATZ CUSTODIAN FOR TRACY KATZ, EVANSTON RADIOLOGISTS PROFIT SHARING PLAN FOR THE BENEFIT OF DAVID ROCHESTER, EGGENER FAMILY LIVING TRUST, RICHARD EGGENER CUSTODIAN FOR BRIAN EGGENER, PAUL DUNCAN, and MARY TYLER GANON, Individually, and On Behalf of All Others Similarly Situated, Plaintiffs, v. FIRST MERCHANTS ACCEPTANCE CORP., MITCHELL C. KAHN, THOMAS EHMANN, and PAUL VAN EYL, Defendants. LEO HIRSCH, Trustee of the Goldenberg & Hirsch Profit Sharing Plan, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORP., MITCHELL C. KAHN, THOMAS EHMANN, and PAUL VAN EYL, Defendants. ROBERT GOLDSTEIN, Plaintiff, v. FIRST MERCHANTS ACCEPTANCE CORP., MITCHELL C. KAHN, THOMAS EHMANN, and PAUL VAN EYL, Defendants. MARVIN AND PATSY JACOBS, et al., on behalf of themselves and all others similarly situated, Plaintiffs, v. FIRST MERCHANTS ACCEPTANCE CORP., et al., Defendants. JEFF GRUBBA, on behalf of himself and all others similarly situated, Plaintiffs, v. FIRST MERCHANTS ACCEPTANCE CORP., et al., Defendants.

Case No. 97 C 2715, Case No. 97 C 2716, Case No. 97 C 2737, Case No. 97 C 2791, Case No. 97 C 2836, Case No. 97 C 2981, Case No. 97 C 2984, Case No. 97 C 3078, Case No. 97 C 3738, Case No. 97 C 3767, Case No. 97 C 4013, Case No. 97 C 4236, Case No. 97 C 4237

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1997 U.S. Dist. LEXIS 11866*

August 6, 1997, Decided

1997 U.S. Dist. LEXIS 11866, *

**August 11, 1997 DOCKETED**

**DISPOSITION:** [*1] Jacobs/Lax Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel GRANTED. Castillo Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel DENIED. Edgar Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel DENIED. Jacobs/Lax Group's motion to strike the Edgar Group's lead plaintiff papers DENIED as moot.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MITCHELL KAHN, defendant (97-CV-2715): Ronald David Menaker, James J. Moylan, David L. Strauss, Arnstein & Lehr, Chicago, IL.

For PAUL VAN EYL, defendant (97-CV-2715): Robert Montell Stephenson, Terence H. Campbell, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL.

For STOWE W WYANT, MARCY H SHOCKEY, SOLOMON A WEISGAL, defendants (97-CV-2715): Jay A. Canel, Peter M. King, William H. Jones, Leslie Ford Notaro, Canel, Davis & King, Chicago, Il.

For THOMAS EHMANN, defendant (97-CV-3767): Joseph J. Duffy, Allan Horwich, Schiff, Hardin & Waite, Chicago, IL.

For DELOITTE AND TOUCHE, L.L.P., defendant (97-CV-4236, 97-CV-4237): Robert D. McLean, Jeffrey R. Tone, Sidley & Austin, Chicago, IL.

For HARRY LAX, plaintiff (97-CV-2715): Marvin Alan Miller, Kenneth A. Wexler, Jennifer Winter Sprengel, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL.

For HARRY LAX, plaintiff (97-CV-2715): Mark C. Gardy, Stephen J. Fearon, Jr., Abbey, Gardy & Squitieri, LLP, Robert P. Sugarman, Steven G Schulman, Samuel H Rudman, Aaron W. Tandy, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York, NY.

For MILTON MILTON CASTILLO, JR., CHRIS VINES, plaintiffs (97-CV-2716): Marvin Alan Miller, Kenneth A. Wexler, Jennifer Winter Sprengel, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL.

For MILTON MILTON CASTILLO, JR., CHRIS VINES, plaintiffs (97-CV-2716): Robert C. Finkel, Wolf Popper, LLP, New York, NY.

For SAMUEL ZUCKER, plaintiff (97-CV-2737): Robert D. Allison, Chicago, IL.

For SAMUEL ZUCKER, plaintiff (97-CV-2737): Jules Brody, Eduard Korsinsky, Stull, Stull & Brody, New York, NY.

For JARED HERSHKOWITZ, plaintiff (97-CV-2791): Michael Jerry Freed, Michael B. Hyman, Christopher James Stuart, Joseph D. Ament, Much Shelist Freed Denenberg Ament Bell & Rubenstein, P.C., Chicago, IL.

For ROBERT MILLER, plaintiff (97-CV-2836): Fay Clayton, Robert Lawrence Margolis, Robinson, Curley & Clayton, P.C., Chicago, IL.

For SANDERS FAMILY PRT, plaintiff (97-CV-2981): Marvin Alan Miller, Kenneth A. Wexler, Jennifer Winter Sprengel, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL.

For SANDERS FAMILY PRT, plaintiff (97-CV-2981): Mark C. Gardy, Stephen J. Fearon, Jr., Abbey, Gardy & Squitieri, LLP, New York, NY.

For SANDERS FAMILY PRT, plaintiff (97-CV-2981): Lee S. Shalov, Law Offices of Lee S. Shalov, Garden City, NY.

For HOWARD HERTZBERG, plaintiff (97-CV-2984): Marvin Alan Miller, Kenneth A. Wexler, Jennifer Winter Sprengel, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL.

For HOWARD HERTZBERG, plaintiff (97-CV-2984): Mark C. Gardy, Stephen J. Fearon, Jr., Abbey, Gardy & Squitieri, LLP, New York, NY.

For SAMI SAWDAYE, SUZANNA SAWDAYE, plaintiffs (97-CV-3078): Michael Jerry Freed, Michael B. Hyman, Christopher James Stuart, Joseph D. Ament, Much Shelist Freed Denenberg Ament Bell & Rubenstein, P.C., Chicago, IL.

For JAMES L KATZ, ANDREW GRIFFIN PROFIT SHARING PLAN, KATZ MANAGEMENT PROFIT SHARING PLAN, ABE KATZ, EVANSTON

RADIOLOGIST PROFIT SHARING PLAN, EGGENER FAMILY LIVING TRUST, RICHARD EGGENER, PAUL DUNCAN, MARY TYLER GANNON, plaintiffs (97-CV-3738): Marvin Alan Miller, Jennifer Winter Sprengel, Dominic J. Rizzi, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL.

For JAMES L KATZ, ANDREW GRIFFIN PROFIT SHARING PLAN, KATZ MANAGEMENT PROFIT SHARING PLAN, ABE KATZ, EVANSTON RADIOLOGIST PROFIT SHARING PLAN, EGGENER FAMILY LIVING TRUST, RICHARD EGGENER, PAUL DUNCAN, MARY TYLER GANNON, plaintiffs (97-CV-3738): Robert C Schubert, Juden Justice Reed, Schubert & Reed, LLP., San Francisco, CA.

For LEO HIRSCH, plaintiff (97-CV-3767): Robert D. Allison, Chicago, IL.

For LEO HIRSCH, plaintiff (97-CV-3767): Jules Brody, Eduard Korskinsky, Stull, Stull & Brody, New York, NY.

For LEO HIRSCH, plaintiff (97-CV-3767): Karen L Morris, Patrick F. Morris, Morris and Morris, Wilmington, DE.

For ROBERT GOLDSTEIN, plaintiff (97-CV-4013): Marvin Alan Miller, Kenneth A. Wexler, Jennifer Winter Sprengel, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL.

For ROBERT GOLDSTEIN, plaintiff (97-CV-4013): Mark C. Gardy, Stephen J. Fearon, Jr., Abbey, Gardy & Squitieri, LLP, Jonathan M. Plasse, Goodkind, Labaton, Rudoff & Sucharow, New York, NY.

For MARVIN JACOBS, PATSY JACOBS, MARVIN JACOBS IRA, JOSPEH JACOBS IRA, RICHARD M PORT, LUCY Z PORT, KEITH JACOBS, JULI JACOBS, CARL WEBER, SHIRWIN A SIMON IRA, BRUCE M KRAMER IRA, SHERI H SIMON, WALTER CUPKOVIC, DAVID GLAZER IRA, WILLIAM JACOBS, ROBERT M STEIN IRA, ROBERT M STEIN, LARRY A DAVIS, CARYN J DAVIS, LARRY A DAVIS IRA, KENNETH J BAGAN, SCOTT H BAGAN, TRACY E BAGAN, LEE H BAGAN, MICHAEL BAGAN, JERRY CORBISIERO, MORRIS MARTIN, ROSLYN MARTIN, ROBERTA MORRIS, CLIFFORD J. GRAY MARITAL TRUST, CRAIG ZUCKER, plaintiffs (97-CV-4236): David Barry Kahn, Mark E. King, David B. Kahn & Associates, Ltd., Northfield, IL.

For JEFF GRUBBA, plaintiff (97-CV-4237): Ronald L. Futterman, Michael I Behn, Futterman & Howard, Chartered, Chicago, IL.

For JEFF GRUBBA, plaintiff (97-CV-4237): David Barry Kahn, Mark E. King, David B. Kahn & Associates, Ltd., Northfield, IL.

**JUDGES:** David H. Coar, U.S. District Judge

**OPINIONBY:** David H. Coar

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Before the court are three motions for appointment of lead plaintiff and approval of selection of lead counsel pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 and/or § 27D(a)(3)(B) of the Securities Act of 1933.

### I. Facts

First Merchants Acceptance Corporation ("First Merchants" or "Company") is a Delaware corporation with its principal place of business in Deerfield, Illinois. The Company purchases retail installment loan contracts on automobiles. On April 16, 1997, First Merchants announced that it would restate its 1996 financial results and delay reporting its first quarter 1997 results because it had found "irregularities involving [*2] unauthorized entries in the Company's financial records." (Lax Compl., P 2). After this announcement, First Merchants' stock price fell to $ 2.75 per share. To appreciate the magnitude of the fall in price, note, for example, that on April 19, 1996, the shares traded at $ 26.375 per share. To date, First Merchants has not admitted that the accounting irregularities affected any period other than 1996 and the first quarter of 1997.

All of the instant actions were filed following the April 16, 1997 announcement. The first complaint filed was that by plaintiff Lax. Lax's counsel published a notice of the pendency of that complaint through *Business Wire*, in compliance with § 21D(a)(3(A)(I) of the 1934 Act. n1 After the Lax Notice was published, other plaintiffs filed related securities class action complaints alleging similar facts. To date, at least thirteen such complaints have been filed in this district. Some of those complaints alleged class periods different (either shorter or longer) than that alleged in the Lax Complaint. Until June 12, 1997, the earliest date for the beginning of any class period alleged in a "First Merchants" complaint was January 25, 1996. Notices were [*3] filed informing investors that actions had been filed that began the class period on that date. (*See, e.g.,*

Finkel Aff., Exh. D (notice published April 28, 1997 in *PRNewswire*)). All of these notices apparently informed potential class members that they had until sixty days from the date of the filing of the **Lax** complaint to file a motion to be named as lead plaintiff. (*See id.*).

> n1 In relevant part, the notice stated as follows:
>
> > On April 18, 1997, a class action lawsuit was filed . . . on behalf of all persons who purchased or otherwise acquired the common stock of First Merchants Acceptance Corp. ("First Merchants" or the "Company") between April 18, 1996 and April 16, 1997, inclusive (the "Class Period").
>
> > The complaint charges First Merchants and certain officers and directors of the Company during the relevant time period with violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by, among other things, issuing to the investing public false and misleading financial statements and press releases concerning First Merchants' income and earnings. . . .
>
> > . . . .
>
> > If you are a member of the class described above, you may, not later than sixty days from today, move the Court to serve as lead plaintiff of the class, if you so choose. . . .
>
> (Gardy Aff., Exh.B; Schulman Aff., Exh. B).

[*4]

On June 12, 1997, however, two class actions were filed that assert that the class period began on September 23, 1994, at least sixteen months prior to the beginning of any other alleged class period. *See* Jacobs, et al. v. **First Merchants Acceptance Corp., et al.**, No. 97 C 4236 and **Grubba v. First Merchants Acceptance Corp., et al.**, No. 97 C 4237. The September 23, 1994 date apparently corresponds to the date on which First Merchants stock was first publicly traded. The **Jacobs** and **Grubba** complaints also assert claims not found in any of the other complaints. For example, the **Jacobs** and

**Grubba** complaints name the accounting firm of Deloitte & Touche as a defendant. The complaints also assert claims arising under the Securities Act of 1933 and claims for negligence, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, common law fraud, and negligent misrepresentation.

Despite the differences between the complaints, this court made findings of relatedness on April 29, May 28, June 6, and June 20, 1997; subsequently, all of the "First Merchants" cases in the district were reassigned to this judge's [*5] calendar. Presently before the court are motions by two groups plaintiffs/potential class members to be appointed lead plaintiff, as well as a motion by a third group of plaintiffs to be appointed lead plaintiff for purchasers of First Merchants notes.

## II. Discussion

### A. The Private Securities Litigation Reform Act of 1995

The issues before the court arise under the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, which amended the Securities Act of 1933, *15 U.S.C. § 77a-77bbbb*, and the Securities Exchange Act of 1934, *15 U.S.C. § 78a-78lll*. The PSLRA applies to private class actions, such as this one, brought pursuant to the Federal Rules of Civil Procedure. *See 15 U.S.C. § 77z-1*(a)(1). As noted in *Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875,* No. 96-1567- *Civ-T-17A, 1997 WL 118429* (M.D. Fla. Feb. 6, 1997), Congress enacted the PSLRA in response to perceived abuses of the class action procedure. **Id.** at *1 (citing H. Conf. Rep. No. 104-369, at 31 (1996)). "The manifest intent of the [PSLRA] is determining the plaintiff most capable of pursuing the action and representing the interests of the class." **Id.** at *2 (citing [*6] H. Conf. Rep. No. 104-369, at 34)).

The PSLRA amended the Securities Exchange Act of 1934 by adding § 21D, to be codified at *15 U.S.C. § 78u-4*. n2 Section 21D(a)(3) now sets forth procedures for early notice to potential class members of the filing of the class action. *15 U.S.C.A. § 78u-4*(a)(3). Under those provisions, the named plaintiff in the action must file notice within twenty days of filing suit to inform potential class members of their right to move to be appointed lead plaintiff. *15 U.S.C.A. § 78u-4*(a)(3)(A)(i). Such notice must be published "in a widely circulated national business-oriented publication or wire service." *15 U.S.C.A. § 78u-4*(a)(3)(A)(i).

> n2 While the complaints in this litigation assert claims under both the 1933 and 1934 acts, the bulk of the claims arise under the 1934 act.

1997 U.S. Dist. LEXIS 11866, *

The court will therefore cite to its provisions in determining lead plaintiff in this litigation. In any event, the lead-plaintiff provisions of the 1933 and 1934 acts are identical.

The PSLRA also altered [*7] the procedure by which the court appoints lead plaintiff for the purported class. Section 21D(a)(3)(B)(i) provides:

> Not later than 90 days after the date on which a notice is published . . . the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . .

*15 U.S.C.A. § 78u-4(a)(3)(B)(i).* The PSLRA creates a rebuttable presumption that the most adequate plaintiff is that person who "has either filed the complaint or made a motion in response to a notice [published pursuant to *15 U.S.C.A. § 78u-4(a)(3)(A)(i)],*" "has the largest financial interest in the relief sought," and "otherwise satisfies the requirements of Rule 23." *15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I)(aa), (bb), & (cc).* Any member of the purported plaintiff class may rebut the presumption upon proof "that the presumptively most adequate plaintiff . . . will not [*8] fairly and adequately protect the interests of the class . . . [or] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(II)(aa) & (bb).* A purported class member may undertake discovery to mount such a challenge only if she "first demonstrates a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *15 U.S.C.A. § 78u-4(a)(3)(B)(iv).*

Once the court has appointed lead plaintiff, the PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain lead counsel." *15 U.S.C.A. § 78u-4(a)(3)(B)(v).*

**B. Jacobs/Lax Group and Castillo Group Motions**

Under the provisions outlined above, the "Jacobs/Lax Group" is presumptively the most adequate lead plaintiff. n3 This is by virtue of the fact that the Jacobs/Lax Group has timely moved this court to be appointed as lead plaintiff, has the largest financial

interest in the relief sought, and otherwise appears to meet the adequacy and typicality requirements of Rule 23. However, the "Castillo Group" contests this presumption. n4 First, [*9] the Castillo Group argues that the Jacobs/Lax Group has not complied with the notice requirements of § 21D(a)(3)(A). Specifically, the Castillo Group contends that the Jacobs/Lax Group "failed to inform investors that it extended the Class Period to 1994 and also failed to describe the claims asserted in its cases." (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 3). Second, even if § 21D's notice provisions have been satisfied, the Castillo Group contends that the Jacobs/Lax Group cannot adequately represent the purported class. The court will discuss these arguments in turn.

n3 The Jacobs/Lax Group is comprised of the named plaintiffs in *Jacobs, et al. v. First Merchants Acceptance Corp., et al.,* No. 97 C 4236; *Lax v. First Merchants Acceptance Corp., et al.,* No. 97 C 2715; *Katz, et al. v. First Merchants Acceptance Corp., et al.,* No. 97 C 3738; and *Grubba v. First Merchants Acceptance Corp., et al.,* No. 97 C 4237, as well as certain other class members that have not yet filed complaints.

n4 The Castillo Group, referred to as the "Abbey Group" by the Jacobs/Lax Group, consists of the plaintiffs in *Castillo, et al. v. Kahn, et al.,* No. 97 C 2716; *Zucker v. First Merchants Acceptance Corp., et al.,* No. 97 C 2737; *Miller v. First Merchants Acceptance Corp., et al.,* No. 97 C 2836; *Sanders Family Partners v. First Merchants Acceptance Corp., et al.,* No. 97 C 2981; *Hertzberg v. First Merchants Acceptance Corp., et al.,* No. 97 C 2984; *Hirsch v. First Merchants Acceptance Corp., et al.,* No. 97 C 3767; *Goldstein v. First Merchants Acceptance Corp., et al.,* No. 97 C 4013; and *Hershkowitz v. First Merchants Acceptance Corp., et al.,* No. 97 C 2791, as well as fifty-nine other class members who have not filed complaints, but who support the Castillo Group's motion.

[*10]

1. Notice

The Castillo Group initially contended that no notice regarding the expanded class period (i.e., September 23, 1994 to April 16, 1997) had been published. This contention was clearly incorrect. On June 14-16, 1997, a notice was published in *Investor's Business Daily,* which stated as follows:

On June 12, 1997 class actions were filed . . . against First Merchants Acceptance Corporation, certain of its former officers and directors and its auditor on behalf of all persons who purchased First Merchants' common stock between September 23, 1994 and April 16, 1997 (the "Class Period"). The Complaint charges that during the Class Period, defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Section 11 of the Securities Act of 1933 by making false and misleading statements and SEC filings concerning First Merchants' income and earnings. Similar actions have been previously filed. If you are a class member and wish to be appointed lead plaintiff you must move the court to be appointed not later than sixty days from April 18, 1997. . . .

(Jacob/Lax Reply Mem. in Support of Motion, Exh. A).

While the Castillo Group's now admits [*11] that its initial contention was incorrect, it nevertheless argues that the notice that was published was inadequate because it does not comply with the strictures of § 21D. The Castillo Group's arguments in this regard are unavailing.

Section 21D(a)(3)(A)(i)(II) provides that the published notice should instruct potential class members "that, *not later than 60 days after the date on which the notice is published*, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *15 U.S.C.A. § 78u-4(a)(3)(A)(i)(II)* (emphasis added). The notice published in *Investor's Business Daily* clearly does not comply with this language, because it instructs potential class members that they must file a motion to serve as lead plaintiff within sixty days of April 18, 1997, and not within sixty days of the date of the notice (i.e., June 14, 1997). The court finds this deficiency to be immaterial, for several reasons.

At the outset, it is doubtful whether § 21D requires publication of notice of the extended class period in the **Jacobs** and **Grubba** complaints. Section 21D(a)(3)(A)(ii) provides

if more than one action on behalf [*12] of a class asserting substantially the same claim or claims arising under this chapter is filed, *only the plaintiff or plaintiffs in the first filed action shall be required to*

*cause notice to be published in accordance with clause (i).*

*15 U.S.C.A. § 78u-4*(a)(3)(A)(ii) (emphasis added). In this case, the court has already made a finding of relatedness between the **Jacobs** and **Grubba** actions and the complaints alleging shorter class periods and has ordered the reassignment of all the cases to this judge's calendar. n5 This finding was based on the fact that the complaints were based on substantially the same claims, despite the fact that they alleged different class periods. n6 The fact that a later-filed complaint alleges a different class period would not bring that complaint out of the aegis of § 21D(a)(3)(A)(ii). That section refers only to *claims* and not to class periods. If a later action asserts substantially the same claims, no new notice is required. In this case, **Jacobs** and **Grubba** do assert substantially the same claims as the other actions, namely, those based on the Securities Exchange Act of 1934. While the **Jacobs** [*13] and **Grubba** complaints also name Deloitte & Touche as a defendant and assert additional statutory and common law claims, such claims do not render the **Jacobs** and **Grubba** actions dissimilar to the other actions under § 21D(a)(3)(A)(ii).

n5 Local Rule 2.31 provides for reassignment of a case to the calendar of another judge of the district if that case is found to be "related" to an earlier-numbered case assigned to that judge. The rule defines relatedness as follows:

Two or more cases may be related if one or more of the following conditions is or are met:
(1) the cases involve the same property;
(2) the cases involve the same issues of fact or law;
(3) the cases grow out of the same transaction or occurrence;
(4) in class action suits, one or more of the classes involved in the cases is or are of [sic] the same . . .
.

n6 None of the Castillo Group plaintiffs opposed the relatedness motions. In the words of the court in **Chan, et al. v. Orthologic Corp., et al.**, No. CIV 96-1514 (D. Ariz. Dec. 17, 1996) (Broomfield, J.) (attached as exhibit to Jacobs/Lax Mem. in Opp. to Abbey Motion), the Castillo Group's "concerns regarding the different class periods did not cause the [Castillo Group plaintiffs] the same concern at the [relatedness] stage as they evidently do now."

[*14]

Beyond the fact that notice is not required in this case, the court finds that requiring published notices for complaints that merely expand the class period to inform class members that they may move to be appointed lead counsel within sixty days of the *date of that published notice* would be inconsistent with the purposes of the PSLRA. Instead of ensuring that lead plaintiffs are appointed as quickly as possible after the filing of the first class action complaint, enforcement of such a rule would mean that the lead plaintiff could not be appointed until sixty days after the publication of the *last* notice related to that securities litigation. In some cases, appointment of lead counsel could be delayed indefinitely if new complaints alleging earlier starting dates for the class period were filed. Such a result would clearly thwart the intent of the PSLRA, which was meant to have lead plaintiffs appointed as soon as practicable. n7

n7 The Castillo Group's contention that the date given in the *Investor's Business Daily* notice for class members to file lead-plaintiff motions is improper is also somewhat disingenuous. At least one of the notices in the Castillo Group adopted the same convention of setting the date for filing of lead-plaintiff motions as sixty days from the date on which the first notice (i.e., the Lax Notice) was published. (*See* Finkel Aff., Exh. D (notice dated April *28*, 1997 that informed potential class members that they had until sixty days from April *18*, 1997 to file lead-plaintiff motions). In fact, what is not in dispute in this case is that potential class members had only until June 17, 1997 to file motions to be named lead plaintiff at this time. It would be incongruous if class members who believe that their claims date back to stock purchases as early as September 1994, but whose class period encompasses that alleged by other plaintiffs, could not move to be lead plaintiff. Under the Castillo Group's reasoning, such class members would have until 60 days from the date of filing of the notice extending the class period to September 1994 to move to be lead plaintiff of that class period. In the meantime, however, the court would have presumably ruled on previous lead-plaintiff motions for class periods subsumed by the extended class period.

Nor is the court concerned that the notice regarding the extended class period was published only days before the filing deadline for lead-plaintiff motions. The PSLRA does not envisage that *all* potential class members will receive notice of the right to be lead plaintiff. If this were the case, the PSLRA would have provided for an individual-notice requirement, rather than a published-notice requirement. The PSLRA's notice provision, then, is clearly intended to reach sophisticated investors. In this case, investors were first notified of First Merchants' wrongdoing and of the initiation of the *Lax* class action in mid-April 1997. Presumably, this prompted some of those investors to file their own complaints and perhaps ultimately led to the filing of the *Jacobs* and **Grubba** actions. The court is satisfied that the PSLRA's intent to inform potential class members of their right to move for lead-plaintiff status has been not been undermined.

[*15]

The Castillo Group's second objection to the June 14-16 *Investor's Business Daily* notice is that it was not published in "a widely circulated business-oriented publication or wire service," as required by § 21D(a)(3)(A). The court rejects this contention. The PSLRA does not define "widely circulated." Thus, the court must make its own interpretation as to what the term means. In this case, the court finds that, while *Investor's Business Daily* might not have as large a circulation as the *Wall Street Journal*, it is nevertheless widely circulated and, more importantly, apparently read by sophisticated investors. The likelihood of a First Merchants' investor actually seeing a notice in the *Investor's Business Daily* "is arguably as great as finding such information by skimming the back pages of the *Wall Street Journal*." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996).

The court therefore concludes that the notice requirements of § 21D have been met in this action and that the applicable class period for determining lead plaintiff is that which is alleged in the **Jacobs** and **Grubba** actions, i.e., September 23, 1994 to [*16] April 16, 1997. In reaching this conclusion, the court is cognizant of the fact that strict adherence to this rule could encourage abuses. Clearly, such a holding would allow parties to wait until only a few days before the initial 60-day period runs to file additional class action complaints that purport to lengthen the class period in an attempt to become the party with the largest financial interest in the litigation. While such concerns are raised in this case, the court is preliminarily satisfied that the **Jacobs** and **Grubba** complaints have a good-faith basis for extending the class period to September 1994. n8 Should subsequent developments reveal that the pleading

of an extended class period was not done in good faith, this court will be able to fashion a sanction that will adequately address the transgression.

n8 While First Merchants has only admitted that the accounting irregularities affected 1996 and early 1997 stock prices, such admissions on the part of a defendant should not control the length of the class period. The Jacobs/Lax Group has pointed to several facts supporting a class period dating back to September 1994. Specifically, it points to First Merchants' admission that it overstated income by $ 22 million and intends to write this off in the first quarter of 1997 as a way to "catch up" on uncollectible expenses on old loans, as well as First Merchants' statement that the $ 22 million will not be included in the Company's 1996 restatement of income. The **Jacobs** complaint relies on these statements to allege that the $ 22 million is not attributable to either 1996 or 1997 operations. (Jacobs Compl., PP 4, 44). Determining whether the complaint is correct in these assertions is for another day.

In any event, and as the Castillo Group notes, the court should not determine the proper class period under Rule 23 at this stage of the litigation. In fact, the Castillo Group has specifically stated that it is only attacking the Jacobs/Lax Group's class period on the basis of the fact that Jacobs/Lax "has not complied with the [PSLRA] and, therefore, cannot maintain a claim on behalf of a class at this time." (Castillo Group Reply Mem., at 7 n.8). Because the Jacobs/Lax Group *has* complied with the PSLRA, the bulk of the Castillo Group's objections to the class period for purposes of determining lead plaintiff are mooted.

[*17]

2. Typicality and Adequacy

The Jacobs/Lax Group is presumptively the most adequate plaintiff in this action. Plaintiffs in the Jacobs/Lax Group either filed a complaint and/or made a motion to be lead plaintiff in satisfaction of § 21D(a)(3)(B)(iii)(I)(aa). Those plaintiffs are also the "person or group of persons" that have the largest financial interest among the named plaintiffs in this class action. The PSLRA does not state how the court should determine who has the largest financial interest, but four factors are surely relevant: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the

class period; and (4) the approximate losses suffered by the plaintiffs. (*See* Jacobs/Lax Mem. in Support of Motion, at 12-13) (suggesting factors).

In this case, members of the Jacobs/Lax Group bought 120,820 shares during the class period September 23, 1994 to April 16, 1997. n9 Those same plaintiffs sold 13,150 shares during that period, meaning that they had a net purchase of 107,670 shares, which had a value of $ 1,908,467. Finally, the Jacobs/Lax plaintiffs allegedly suffered damages of approximately $ [*18] 1,406,376. (*See id.*). n10

n9 For the purposes of these motions, the court will accept as true the figures and calculations put forward by the respective parties.

n10 The Castillo Group alleges that the Jacobs/Lax Group's loss during this period was only $ 1,382,219. (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 11).

One member of the Jacobs/Lax Group also has suffered the greatest single alleged loss of any of the plaintiffs. Larry A. Davis allegedly has more than $ 700,000 in damages through a joint trading account with his wife and through his IRA account. Thus, naming the Jacob/Lax Group as lead plaintiff would further the purposes of the PSLRA, which attempted to ensure that sophisticated investors (as measured by the level of investment) would control the course of securities litigation, rather than it being controlled by securities lawyers. *See* **Greebel v. FTP Software, Inc.,** *939 F. Supp. 57, 63 (D. Mass. 1996)* ("Congress' purpose was not to ensure notice to the entire class, but merely to those sophisticated investors that Congress deemed presumptively most adequate to serve as lead plaintiffs in securities class actions.").

[*19]

Members of the Castillo Group purchased some 163,054 shares during the period January 25, 1996 to April 16, 1997. (No figures have been provided for the class period beginning September 23, 1994.) The Castillo Group has suffered losses of approximately $ 1,123,214 during the period September 23, 1994 through April 16, 1997. (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 11). n11 Furthermore (according to the Jacobs/Lax Group), the Castillo Group sold nearly 70% of its First Merchant holdings during the class period at prices that were inflated by the alleged fraud, which would presumably diminish their actual losses. (*See* Jacobs/Lax Mem. in Opp. to Abbey Group Motion, at 5). During the

same period, the Jacobs/Lax plaintiffs sold only 11% of their shares. (*See id.*). These figures indicate that the Jacobs/Lax Group has the largest financial interest in this litigation, owing to the fact that the plaintiffs that make up the group have suffered the largest alleged losses.

n11 The Castillo Group allegedly suffered losses of $ 1,151,672 for the period January 25, 1996 through April 16, 1997. (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 10).

[*20]

Finally, the Jacobs/Lax Group otherwise satisfies the requirements of Rule 23. Rule 23(a) states that: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. However, as noted by one court, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." *Fischler, 1996 WL 118429*, at *2.

The court finds that the Jacobs/Lax Group is both typical and adequate under Rule 23(a). All of the claims in these cases arise from plaintiffs' purchases of First Merchants securities during a time in which defendants overstated the Company's income and thereby artificially inflated [*21] share prices. While the time period in which these overstatements varies between the two plaintiff groups, the Jacobs/Lax Group meets the typicality requirement because its claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). Nevertheless, if discovery in this case shows that the different class periods do significantly affect the nature of the parties' claims, the court may grant a motion to divide the class into appropriate subclasses. *See Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

As to adequateness under Rule 23(a) standards, the Jacobs/Lax Group must simply (1) not have claims that are antagonistic to or that conflict with those of other class members, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy,

*Gammon v. GC Serv. Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995); and (3) be represented by attorneys who are competent, experienced, qualified, and generally [*22] able to conduct the litigation vigorously, **id.** *See also Halperin v. Nichols, Safina, Lerner & Co.*, No. 94 C 6960, *1996 WL 634037* (N.D. Ill. Oct. 29, 1996) (Plunkett, J.) (listing adequacy criteria). In this case, there can be no serious dispute that the interests of the Jacobs/Lax Group are aligned with those of the class, that the Jacobs/Lax Group will prosecute this case with vigor, or that its chosen counsel are competent, experienced, and qualified.

The facts that some plaintiffs in the Jacobs/Lax Group have sued Deloitte & Touche and that they have brought additional claims under the 1933 act and state law does not render the group inadequate to be lead plaintiff. In *In re Donnkenny Inc. Securities Litigation, 171 F.R.D. 156 (S.D.N.Y. 1997)* (Cedarbaum, J.), the court found that the party that was presumptively the most adequate plaintiff (i.e., Emanon Partners) did not fail to meet the adequacy and typicality requirement merely because it had investments in call and put options in addition to investments in common stock. In *Donkenny*, the other parties moving for lead plaintiff status argued that Emanon Partners' call and put option investments [*23] "invited the type of unique defenses disallowed by Rule 23 for class representatives." *Donkenny, 171 F.R.D. at 158*. The court rejected this argument, noting that the bulk of Emanon Partners' claims related to its investments in common stock and that the other moving parties had not otherwise demonstrated atypicality or unique defenses. **Id.**

In this case, there is no dispute that the Jacobs/Lax Group's investments were in the same types of securities as those of the Castillo Group. The only difference in those investments is that some of the Jacobs/Lax investors also purchased First Merchant securities in 1994 and 1995. n12 This does not render these plaintiffs atypical or inadequate. The Castillo Group itself includes complaints with varying class periods. One alleges a class period of less than three months (i.e., **Zucker v. First Merchants Acceptance Corp., et al.**, No. 97 C 2737), while others allege class periods of up to fifteen months. The varying class periods within the Castillo Group (and between the Castillo Group and the Jacobs/Lax Group) can nevertheless be harmonized because all of the complaints are based upon a common set of operative facts. [*24]

n12 Even several of the members of the Castillo Group purchased First Merchants stock during the class period alleged by the **Jacobs** and **Grubba** complaints. (*See* Gardy Aff., Exh. C

1997 U.S. Dist. LEXIS 11866, *

(Miller Certification, indicating purchase of shares in November and December 1995) & Exh. D (Ballard Certification, indicating purchase of shares beginning in October 1994)).

The Castillo Group contends that the additional claims asserted by the Jacobs/Lax plaintiffs, namely, those against Deloitte & Touche and those under the 1933 act and under state law, render the Jacobs/Lax plaintiffs atypical and inadequate because it means that they will be subject to unique defenses. This argument is unavailing. Section 21D sets up a presumption that the plaintiff with the largest financial interest is the most adequate lead plaintiff. While that presumption may be rebutted by showing that the presumptively most adequate plaintiff is subject to unique defenses, the opposing party must also show that such unique defenses [*25] "render such plaintiff incapable of adequately representing the class." *15 U.S.C.A. § 78u-4*(a)(3)(B)(iii)(II)(bb). In this case, the Castillo Group has not shown that, in addition to being subject to unique defenses, the Jacobs/Lax plaintiffs will not adequately represent the claims of the entire class.

Also unpersuasive is the Castillo Group's contention that the additional claims asserted by the Jacobs/Lax Group makes it unsuitable to represent the interests of other plaintiffs. On the contrary, the fact that the *Castillo* plaintiffs do not assert claims under the 1933 act, under state law, or against Deloitte & Touche raises the question of whether the Castillo Group can adequately represent the interests of those plaintiffs who do bring such claims.

The court concludes that the Jacob/Lax Group is the most adequate lead plaintiff in this litigation.

3. Appointment of Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C.A. § 78u-4*(a)(3)(B)(IV). The Jacobs/Lax Group has retained the law firms of David B. Kahn & Associates, Ltd. and Milberg Weiss Bershad Hynes [*26] & Lerach LLP as co-lead counsel. The court has reviewed the resumes of these firms and has noted their involvement in similar law suits. The court is satisfied that these firms are competent, experienced, and qualified to represent the interests of the plaintiff class. Therefore, the law firms of David B. Kahn & Associates, Ltd. and Milberg Weiss Bershad Hynes & Lerach LLP are appointed as co-lead counsel, provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses. *See*

*Donkenny, 171 F.R.D. at 158* (noting that use of co-lead counsel should not result in increased attorneys' fees and expenses).

C. Edgar Group's Motion

A third group of plaintiffs -- the "Edgar Group" n13 -- has moved to be named lead plaintiff of a separate class of purchasers of First Merchant debt securities. This motion will be denied. Currently, none of the complaints names debt purchasers nor have any of the Edgar Group plaintiffs filed a complaint on behalf of such purchasers. Furthermore, in its reply brief, the Edgar Group disingenuously noted that its motion was unopposed. This is not surprising, [*27] given the fact that the Edgar Group apparently failed to serve its motion on many of the other plaintiffs. For these reasons, the court denies the Edgar Group's motion at this stage of the litigation.

n13 The Edgar Group consists of James Edgar, Mary Edgar, Emory Sova, Doris Sova, and John Beuker.

WHEREFORE, for the reasons stated above, the Jacobs/Lax Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel is GRANTED. The plaintiffs in **Jacobs, et al. v. First Merchants Acceptance Corp., et al.**, No. 97 C 4236; **Lax v. First Merchants Acceptance Corp., et al.**, No. 97 C 2715; **Katz, et al. v. First Merchants Acceptance Corp., et al.**, No. 97 C 3738; and **Grubba v. First Merchants Acceptance Corp., et al.**, No. 97 C 4237, and class members David Kailbourne and Peter Greenwald are appointed as lead plaintiffs in this matter. The law firms of David B. Kahn & Associates, Ltd. and Milberg Weiss Bershad Hynes & Lerach LLP are appointed co-lead [*28] counsel.

The Castillo Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel is DENIED. The Edgar Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel is DENIED. The Jacobs/Lax Group's motion to strike the Edgar Group's lead plaintiff papers is DENIED as moot.

ENTER:

David H. Coar

U.S. District Judge

Dated: August 6, 1997